IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

SAM H. HAMWI,
                    Plaintiff,

        Vs.                                        No. 08-4151-SAC

DEN-TEX CENTRAL, INC.
d/b/a Denny's Restaurant,

                    Defendant.

MEMORANDUM AND ORDER

        This is an employment discrimination case based on claims of

national origin and ancestry discrimination brought under Title VII of the

Civil Rights Act of 1964, ("Title VII"), 42 U.S.C. § 2000e, *et seq.*; 42 U.S.C.

§ 1981; and the Kansas Act Against Discrimination, ("KAAD"), K.S.A. 44-

1001 *et seq.*  The case comes before the court on the defendant's motion

for summary judgment.  (Dk. 15).  Having read the motion, the plaintiff's

response (Dk. 23), and all matters properly submitted with these filings, the

court has researched the relevant law and is ready to rule.

        The plaintiff, Sam H. Hamwi ("Hamwi"), a native of Syria,

worked for the defendant, Den-Tex Central, Inc., at its Denny's restaurants

in Topeka, Kansas, from February of 2006 to December 30, 2006.  He

claims that the supervising managers applied the terms and conditions of

this employment in a disparate manner on the basis of his ancestry and national origin and eventually terminated him for the same discriminatory reasons. The defendant seeks summary judgment arguing the plaintiff may not bring a national origin claim under 42 U.S.C. § 1981 and the plaintiff is unable to prove a prima facie case of discrimination and/or pretext in the regional manager's stated reason for termination.

**SUMMARY JUDGMENT STANDARDS**

A court grants a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure if a genuine issue of material fact does not exist and if the movant is entitled to judgment as a matter of law. The court is to determine "whether there is the need for a trial-whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will . . . preclude summary judgment." *Id.* There are no genuine issues for trial if the record taken as a whole would not persuade a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indust. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

In applying this standard, "[a]ll inferences arising from the record before us must be drawn and indulged in favor of the [nonmovant]." *Stinnett v. Safeway, Inc.*, 337 F.3d 1213, 1216 (10th Cir. 2003) (internal quotation marks omitted). "Credibility determinations [and] the weighing of the evidence . . . are jury functions, not those of a judge." *Id.* at 1216 (internal quotation marks omitted). Nevertheless, "the nonmovant must establish, at a minimum, 'an inference of the existence of each element essential to [her] case.'" *Croy v. COBE Laboratories, Inc.*, 345 F.3d 1199, 1201 (10th Cir. 2003) (quoting *Hulsey v. Kmart, Inc.*, 43 F.3d 555, 557 (10th Cir. 1994)). Put another way, the non-movant "must still identify sufficient evidence requiring submission to the jury to survive summary judgment." *Piercy v. Maketa*, 480 F.3d 1192, 1197 (10th Cir. 2007).

The summary judgment movant bears the initial burden of pointing "to those portions of the record that demonstrate an absence of a genuine issue of material fact given the relevant substantive law." *Thomas v. Wichita Coca-Cola Bottling Co.*, 968 F.2d 1022, 1024 (10th Cir.), *cert. denied*, 506 U.S. 1013 (1992). If this burden is met, the nonmovant must "set forth specific facts' that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler v.*

*Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998). (citations omitted). "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Id.* Only admissible evidence may be reviewed and considered in a summary judgment proceeding. *See Gross v. Burggraf Constr. Co.*, 53 F.3d 1531, 1541 (10th Cir. 1995). Conclusory allegations alone cannot defeat a properly supported motion for summary judgment. *White v. York Intern. Corp.*, 45 F.3d 357, 363 (10th Cir.1995). The nonmovant's "evidence, including testimony, must be based on more than mere speculation, conjecture, or surmise." *Bones v. Honeywell Intern., Inc.*, 366 F.3d 869, 875 (10th Cir.2004).

The summary judgment inquiry is essentially "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52. More than a "disfavored procedural shortcut," summary judgment is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.' Fed.R.Civ.P. 1." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

**STATEMENT OF UNCONTROVERTED FACTS**

The plaintiff Hamwi started working in February of 2006 at the Denny's restaurant on Wanamaker Street and was subsequently transferred to the Denny's restaurant on Topeka Boulevard. Managers decided to transfer him back to the Wanamaker restaurant where he then worked as an assistant manager for approximately one month until his was termination on or about December 30, 2006. Hassib Darweesh ("Darweesh") held the position of District Manager over the restaurants where the plaintiff worked. Barry Aboras ("Aboras") was the General Manager of the Wanamaker restaurant, and he was the plaintiff's immediate supervisor at the time of termination.

Aboras[1] and Darweesh are Arab Americans, and both knew the plaintiff was Syrian when Darweesh hired Hamwi with the recommendation of Aboras. The plaintiff recalls that during his employment Aboras commented to the plaintiff that he should not have been hired because as a Syrian he didn't "even belong in this country." (Hamwi Dep. p. 9). Aboras also said that "[h]e shouldn't have let anybody hire me [Hamwi] in the first place." *Id.* at 36. The plaintiff testified that Aboras repeatedly referred to

---

[1]Aboras is Palestinian but told the plaintiff that he had changed his citizenship to Israel.

him as not fitting in Aboras's "group" because he was Syrian and that Aboras frequently complained that Syrians had not helped the Palestinians in the conflict with Israel. *Id.* at 5-6. The plaintiff testified that Aboras encouraged employees to undermine Hamwi's supervisory authority and told the other restaurant manager that the plaintiff was a threat to take over their stores. *Id.* at 26.

As a condition of employment, the plaintiff read and signed a statement acknowledging in part that he was "to report instances of harassment or discrimination to" his General Manager, District Manager or the Director of Human Resources. The plaintiff testified that he brought to Darweesh several issues about Aboras regarding sexual harassment and other illegal activity, and Darweesh told Hamwi "to look the other way" because Aboras "oversees the operation in Topeka." (Hamwi Dep. at 50). In late November or early December of 2006, while his transfer back to the Wanamaker restaurant was being processed, the plaintiff complained to Darweesh that Aboras was hostile to him because he was Syrian and that the plaintiff did not want to work with Aboras. The plaintiff testified that Darweesh said he didn't believe Hamwi, instructed Hamwi to "look the other way" and to do what Aboras told him, and stated that the transfer

6

decision was final. (Hamwi Dep. pp. 84-85). Darweesh, however,

declares that the plaintiff "never made a complaint of discrimination to" him.

(Dk. 16-9, ¶ 19).

The defendant asserts the plaintiff was terminated pursuant to

this provision from the Employee Handbook:

> Excessive tardiness, non-excused absences, or failure to timely notify
> the supervisor of any absences or lateness will not be tolerated and
> may be cause for disciplinary action, up to and including termination.
> **An employee who fails to report for work or report an absence
> four (4) hours in advance on two (2) consecutive work days or
> two (2) days within a six (6) month period will be deemed to have
> voluntarily resigned effective the last day worked, absent an
> acceptable medical excuse.**

(Dk. 16-5, p. 2). As discussed hereafter, the defendant's enforcement of

this provision implicates several genuine issues of material facts.

On December 30, 2006, Darweesh received a telephone call

from Aboras who informed him that the plaintiff was causing a disturbance

at the Wanamaker restaurant. As for the circumstances giving rise to the

disturbance, the defendant relies on the interrogatory answers of Darweesh

to which the plaintiff objects as hearsay. The court sustains the plaintiff's

objections.[2] Darweesh instructed Aboras to call another manager to cover

---

[2]On summary judgment, a court may consider evidence if it would be
admissible at trial. *Adams v. Am. Guar. & Liab. Ins. Co.*, 233 F.3d 1242,
1246 (10th Cir. 2000) ("Hearsay testimony that would be inadmissible at

the plaintiff's shift.

According to Darweesh, he spoke with the plaintiff by telephone

on December 30th, saying:

> I then spoke with Plaintiff and confirmed that he was not being fired,
> but he had to hand his restaurant keys to Barry.  I also instructed him
> to go home and call me the next morning so that we could discuss
> the situation.

(Dk. 16-9, ¶ 6).  According to the plaintiff, the following happened:

> Aboras he wrote down on that paper that I wasn't fired, but he told
> me to my face I will not have a job back in Topeka.  I have to wait and
> talk to Hassib [Darweesh].  He'll call me and let me know, but he
> wanted key for the store and he doesn't want me in the store any
> more.  He doesn't even want me to walk in the store any more.
> I said so basically you're telling me that I'm losing my job.  And
> he said that's for Hassib to decide, but I don't think you're going to
> have a job in Topeka because everybody know that he said I fire
> many people before you and you're going to be gone.
> So I told him I'm not going to leave the store.  I'm going to finish
> my shift, because I was here to finish my shift.  And after I leave if he
> have any problems then he could call the district manager and have
> him come and visit with me and fire me.
> He says, no, you're leaving the store right now and I already
> have your replacement here.  I need you to hand your keys and leave
> the store. . . .
> . . . .
> While I was sitting over there he started printing . . . .  I said,
> okay, I'm not leaving until I hear from Hassib.  So, I sat over there
> and he said I got someone out there, he have a gun, he's going to
> shoot you.  I said really, and he said, yeah, he's sitting over there and

---

trial cannot be used to defeat a motion for summary judgment[.]").
Darweesh did not witness the disturbance, and to offer his testimony as
proof of what happened during it would be hearsay.

I was looking at the camera . . .

(Dk. 16-1, Hamwi Dep. at pp. 45-47).  Hamwi testified also that he spoke

by telephone with Darweesh on December 30th and that Darweesh told

Hamwi to go home and that he would call Hamwi after the holiday.  (Dk.

23-1, Hamwi Dep. at 48).  Hamwi said he then left the store when

Darweesh told him to hand the keys over to Aboras and leave the store.

Based on this record, there is a genuine factual issue over what the plaintiff

was told on December 30th about his responsibilities in contacting

Darweesh or the store and in following any work schedule until this contact

was made.

Darweesh declares that he did not receive a call from Hamwi

on January 1st and that he went to the restaurant on January 3rd and

learned the plaintiff had not called or come into the restaurant and no other

employee, including Aboras, had heard from him.  Darweesh said he called

the plaintiff's cell phone that same day and left two messages for the

plaintiff to call him immediately.  The plaintiff in his deposition says that no

one contacted him as he had been told would happen, so he called the

restaurant for Darweesh's telephone number and then called Darweesh on

January 5, 2007.  During this telephone conversation, Darweesh told

Hamwi that he considered Hamwi to have abandoned his job because he did not come to work or call for five days. According to Hamwi, he told Darweesh that he was waiting on Darweesh's call and then asked why Darweesh was taking Aboras' side. Hamwi recalls that Darweesh indicated that the termination was due in part to neither Aboras nor the other manager wanting the plaintiff to work for them and that Aboras had supervisory authority of the operations.

**ARGUMENT AND ANALYSIS**

As Fed. R. Civ. P. 16(d) provides, the pretrial order "controls the course of the action unless the court modifies it." The pretrial order sets forth that the plaintiff's disparate treatment and termination claims are brought as discrimination on the basis of ancestry for purposes of 42 U.S.C. § 1981 and on the basis of national origin for purposes of Title VII and the KAAD. Because there are no claims of discrimination being asserted on any other grounds or theories, the court will not entertain the defendant's request for summary judgment on any other basis.

The defendant seeks dismissal of the plaintiff's claim for relief under 42 U.S.C. § 1981 in that it asserts discrimination on the basis for national origin which is not a protected category under that statute. The

defendant points out that the Aboras and Darweesh are both Arab-Americans and that the plaintiff has come forward with evidence for only national origin claims. The plaintiff responds that his § 1981 claim is not based on national origin but on his "Syrian" ancestry and the evidence of Aboras' discriminatory statements against Syrians. The pretrial order denotes the plaintiff's theory of recovery under § 1981 to be discrimination on the basis of ancestry, not national origin. (Dk. 12, p. 5).

Because the defendant did not address the plaintiff's § 1981 ancestry claim as stated in the pretrial order and has not filed a reply brief challenging the plaintiff's reliance on an ancestry theory, the court has no choice but to deny the defendant's motion for summary judgment. With that ruling, the court would note that the Tenth Circuit takes an expansive view of ancestry claims under § 1981:

> [A]ctually § 1981 does not outlaw national origin discrimination per se, only discrimination on the basis of race. *Saint Francis College v. Al-Khazraji*, 481 U.S. 604, 613, 107 S.Ct. 2022, 2028, 95 L.Ed.2d 582 (1987); see M. Player, *Employment Discrimination Law* § 8.02 (1988). We are cognizant, however, that often the line between national origin discrimination claims under Title VII and racial discrimination claims under § 1981 is "not a bright one." *Saint Francis College*, 481 U.S. at 614, 107 S.Ct. at 2028 (Brennan, J., concurring).
>
> The concept of race under § 1981 is broad. It extends to matters of ancestry which are normally associated with nationality, not race in a biological sense. *See Alizadeh v. Safeway Stores, Inc.*,

802 F.2d 111, 114-15 (5th Cir. 1986) (noting that persons of Iranian descent are a protected race under § 1981, although anthropologists classify them as Caucasian); *Manzanares v. Safeway Stores, Inc.*, 593 F.2d 968, 971 (10th Cir. 1979) (noting that § 1981 is "no[t] necessarily limited to the technical or restrictive meaning of 'race' "). *See also* Player, *supra*, 834 app. C at 841. As the Supreme Court has noted, Congress intended § 1981 to "protect from discrimination identifiable classes of persons who are subjected to intentional discrimination solely because of their ancestry or ethnic characteristics." *Saint Francis College*, 481 U.S. at 613, 107 S.Ct. at 2028. As a person of Iranian descent, Daemi was protected by § 1981's bar against discrimination on the ground of race. *E.g., Alizadeh*, 802 F.2d at 114-15.

*Daemi v. Church's Fried Chicken, Inc.*, 931 F.2d 1379, 1387 (10th Cir. 1991); *Pourghoraishi v. Flying J, Inc.*, 449 F.3d 751, 757 (7th Cir. 2006) (summarizes *Daemi* as "noting that the concept of race under § 1981 is broad, extending to matters of ancestry which are normally associated with nationality, not race in a biological sense"). It seems reasonable to conclude that discrimination on the basis of Syrian descent is as actionable as discrimination on the basis of Iranian descent, *see Daemi*, 931 F.2d at 1387, or Lebanese ancestry, *Amro v. The Boeing Company*, 153 F.3d 726, 1998 WL 380510, at *2, n. 2 (10th Cir. 1998). This assumes, however, that the plaintiff "can prove that he was subjected to intentional discrimination based on the fact that he was born . . . [a Syrian], rather than solely on the place or nation of his origin." *St. Francis College*, 481 U.S. at 613.

12

The defendant next seeks summary judgment arguing the plaintiff is unable to prove the following: that his job performance was satisfactory, that he was terminated under circumstances giving rise to an inference of unlawful discrimination, or that similarly situated non-Syrians were treated differently. Specifically, the defendant contends the plaintiff is unable to show he was qualified for the position considering two prior incidents of discipline, as well as the event on December 30th, all of which demonstrate poor job performance. The defendant also argues that the plaintiff is unable to show he was treated differently from non-Syrian employees when he was terminated for violating the employee handbook policy on reporting for work. The defendant denies that Aboras' negative comments about Syrians are related in any way to Darweesh's decision to terminate the plaintiff for violating this employment policy. The defendant further denies that the plaintiff has any evidence to show that Darweesh's enforcement of the voluntary resignation policy was pretextual here. The defendant asserts it may rely on Darweesh's good faith investigation into the situation and his enforcement of company policy.

Section 1981 prohibits intentional discrimination on the basis of race, ancestry or ethnic characteristics, *Saint Francis College*, 481 U.S. at

613, and Title VII makes it an "unlawful employment practice for an employer" to "discharge" or "discriminate against any individual with respect to . . . terms, conditions, . . . of employment, because of such individual's . . . national origin," 42 U.S.C. § 2000e-2(a)(1).  The plaintiff appears to concede that he is relying on circumstantial evidence, so the court will apply the framework set forth in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973).  *See, e.g., Plotke v. White*, 405 F.3d 1092, 1099 (10th Cir. 2005).  It rests with the plaintiff to establish a prima facie case of a prohibited employment action by a preponderance of the evidence.  *Plotke*, 405 F.3d at 1099.  The court is mindful that this is a *de minimis* burden, for it is only one of production that does not involve any assessments of credibility.  *Id*.

A prima facie case is a flexible standard and its articulation adjusted to fit "the context of the claim and the nature of the adverse employment action alleged."  *Plotke*, 405 F.3d at 1099.  The prima facie case serves to eliminate "the most common nondiscriminatory reasons for" a particular adverse employment action and to provide "a logical connection" between its elements and the inference of discrimination.  *Id*. at 1099-1100.  Thus, to establish a prima facie case, the plaintiff typically

must show: (1) that she is in a protected class, (2) that she was qualified

for the position or benefit at issue, (3) that she suffered an adverse

employment action, and (4) that the adverse employment action "occurred

under circumstances which give rise to an inference of unlawful

discrimination." *Swackhammer v. Sprint/United Management Co.*, 493

F.3d 1160, 1166 (10th Cir. 2007) (quoting *Plotke v. White*, 405 F.3d at

1100). The Tenth Circuit has summarized some of the more common

circumstances giving rise to an inference of a discriminatory motive:

> "actions or remarks made by decisionmakers that could be viewed as
> reflecting a discriminatory animus ..., preferential treatment given to
> employees outside the protected class ..., in a corporate downsizing,
> the systematic transfer of a discharged employee's duties to other
> employees ..., or a pattern of recommending the plaintiff for positions
> for which she is not qualified [or over-qualified] and failure to surface
> plaintiff's name for positions for which she is well-qualified. A plaintiff
> might also rely upon the fact that the defendant, following plaintiff's
> termination, continued to seek applicants to fill the position, ... or,
> more generally, upon the timing or sequence of events leading to
> plaintiff's termination.

*Plotke*, 405 F.3d at 1101 (quoting *Chertkova v. Connecticut General Life*

*Ins.*, 92 F.3d 81, 91 (2d. Cir. 1996)). A prima facie case "raises an

inference of discrimination only because we presume these acts, if

otherwise unexplained, are more likely than not based on consideration of

impermissible factors." *Furnco Const. Corp. v. Waters*, 438 U.S. 567, 577

(1978).

If the plaintiff meets this prima facie case, the burden shifts to the employer to state a legitimate, nondiscriminatory reason for its adverse employment action. *See Fischer v. Forestwood Co., Inc.*, 525 F.3d 972, 979 (10th Cir. 2008). If the employer meets this burden of production in offering a legitimate rationale for the decision resulting in the adverse employment action, then summary judgment is warranted unless the employee can show there is a genuine issue of material fact as to whether the employer's proffered reasons are a pretext for discrimination. *Berry v. T-Mobile USA, Inc.*, 490 F.3d 1211, 1220 (10th Cir. 2007). In *Berry*, the court said this about pretext:

> A pretext argument requires the court to "examine the facts as they appear to the person making the decision," to determine whether the employer "honestly believed those reasons and acted in good faith upon those beliefs." *Rivera v. City & County of Denver*, 365 F.3d 912, 924-25 (10th Cir. 2004) (internal quotations omitted). Our inquiry does not review the wisdom or fairness of the employer's proffered reasons. *Id.* "[A]t issue is whether the evidence of Plaintiff's misconduct presented to [the decisionmakers] was so weak that a rational factfinder could infer that [the] expressed reason for terminating Plaintiff must have been pretextual." *Id.* at 925.

490 F.3d at 1220. Another common way in this circuit of discussing the employee's burden is:

> A plaintiff shows pretext by demonstrating such weaknesses,

16

implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted nondiscriminatory reasons.

*Swackhammer*, 493 F.3d at 1167 (quotation and citations omitted). Thus, in proving pretext, a plaintiff commonly resorts to evidence showing the defendant's stated reasons are not true, the defendant did not comply with company policy in its treatment of the plaintiff, or the defendant treated the plaintiff differently from other similarly situated employees. *Id.* Thus, "the relevant inquiry is not whether the employer's proffered reasons were wise, fair or correct, but whether it honestly believed those reasons and acted in good faith upon those beliefs." *Young v. Dillon Companies, Inc.*, 468 F.3d 1243, 1250 (10th Cir. 2006) (quotation omitted). In making these assessments, this court does not "act as a super personnel department, second guessing employers' honestly held (even if erroneous) business judgments." *Id.* (quotation omitted).

## *Prima Facie Case*

The defendant's first challenge is that the plaintiff is unable to prove that his performance was satisfactory. The defendant has not carried its initial burden of coming forward with a record of admissible

evidence showing an absence of a genuine issue of material fact.  As for

what the plaintiff may have done that led to Aboras calling Darweesh on

December 30, 2006, the court is without a proper record of admissible

evidence to consider the same.  Prior disciplinary incidents are some

evidence of performance issues, but the defendant has not shown that it

had regarded the plaintiff as unqualified as a result of them.  Genuine

issues of material fact riddle the defendant's assertion that the plaintiff

violated the employment policy on reporting to work after December 30th.

The plaintiff's understanding of the directives received from Darweesh and

Aboras on December 30th was that he should not report to work until after

Darweesh had contacted him.  The effect of this immediate directive on this

policy creates a disputed issue as to whether this policy applied or was

suspended as of the time of the plaintiff's discharge.  Additionally, it is a

disputed factual issues whether the defendant's managers ever attempted

to contact the plaintiff prior to his telephone call on January 5th.

The defendant's other challenge is that the plaintiff has no proof

that non-Syrian employees were treated better under similar

circumstances.  The defendant's argument overlooks that this is only one

of the ways--preferential treatment of those outside the protected class--for

the plaintiff to prove the adverse employment action "occurred under circumstances which give rise to an inference of unlawful discrimination." *Swackhammer v. Sprint/United Management Co.*, 493 F.3d at 1166; *Plotke*, 405 F.3d at 1101. Another way is with evidence of "actions or remarks made by decisionmakers that could be viewed as reflecting a discriminatory animus." *Plotke*, 405 F.3d at 1101. The plaintiff cites the discriminatory comments of Aboras along with Aboras' apparent decisionmaking authority as evidenced by statements attributable to Darweesh. There is also the plaintiff's testimony that he complained to Darweesh of Aboras' discriminatory comments and treatment of him and that Darweesh disregarded his complaints. Additionally, the plaintiff offers that Darweesh said the termination was based in part on the fact that Aboras did not want the plaintiff to work for him. This is enough to give rise to an inference of unlawful discrimination. The plaintiff has met his *de minimis* burden of production in presenting a prima facie case of discrimination, and the court reaches this conclusion without making any credibility assessments.

*Pretext*

Even assuming a prima facie case, the defendant contends the

plaintiff has no evidence of pretext in Darweesh's decision that the plaintiff had voluntarily resigned by not reporting to work.  The defendant argues Darweesh's decision was made in good faith and cannot be connected to any discriminatory comments or actions taken by Aboras.  The plaintiff has come forward with admissible evidence from which a rational trier of fact could find that Darweesh's stated reason for termination is pretextual.

According to the plaintiff, Darweesh had been informed of Aboras' discriminatory comments and attitude toward the plaintiff and had chosen to do nothing about it.  This calls into question Darweesh's reliance on Aboras as to what happened on December 30th and what the plaintiff had been told about contacting Darweesh or returning to work.  There is also a credibility question as to whether Darweesh in good faith believed that the plaintiff had violated the failure to report policy in light of the plaintiff's testimony that Darweesh said to wait for his call and that the plaintiff never received one.  Finally, the plaintiff also testified that Darweesh acknowledged his decision to terminate was due in part to Aboras not wanting the plaintiff to work in his store.  From these circumstances, a reasonable factfinder could rationally find Darweesh's stated rationale unworthy of credence and hence infer that the employer

did not act for the asserted nondiscriminatory reasons.

IT IS THEREFORE ORDERED the defendant's motion for

summary judgment (Dk. 15) is denied.

Dated this 11th day of May, 2010, Topeka, Kansas.


s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge